Clara WILLIAMS, et al., Plaintiffs,

v.

BLM COMPANY, INC., d/b/a Aurora Australis Lodge Nursing Home, Defendant.

Civ. A. No. EC 88–160–D–D.

United States District Court, N.D. Mississippi, E.D.

Jan. 29, 1990.

Richard Grindstaff, Columbus, Miss., for plaintiffs.

Jim Hunter Birch, W. Dane Clay, Little Rock, Ark., Tommie G. Williams, Robert S. Upshaw, Greenwood, Miss., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

The cause comes before the court on defendant BLM Company's ("BLM's") motion for summary judgment. Plaintiffs, black nursing aides and a black therapist employed by BLM, allege that they were discriminated against by the conditions of their employment at BLM, that they were denied opportunities to apply for better positions that became available at BLM, and that they were wrongfully terminated by BLM. Plaintiffs claim was brought under 42 U.S.C. § 1981.

The basis for BLM's Motion for Summary Judgment is that plaintiffs' claims are barred by the recent United States Supreme Court decision *Patterson v. McLean Credit Union*, 491 U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which was decided after plaintiffs' complaint was filed.[1]

### SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party must present its basis for the motion after which the non-moving party then has a duty to present enough evidence to create a factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If there is sufficient evidence before the court that would allow a jury to return a verdict for the non-moving party, the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986).

Rule 56 requires the non-moving party to establish the existence of all the elements essential to the cause of action as to which the non-moving party has the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273.

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* The moving party is under no obligation to support its motion with affidavits or other evidence to negate the non-moving party's claim, but is only obligated to inform the court of the basis for its motion and identify the relevant evidence that demonstrates the lack of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 274.

### RETROACTIVITY OF PATTERSON V. McLEAN CREDIT UNION

Plaintiffs' complaint was filed on June 20, 1988. On June 15, 1989, the United States Supreme Court held that "racial harassment relating to the conditions of employment is not actionable under § 1981 [2] because that statute does not ap-

---

1. Defendant also argues that plaintiffs are collaterally estopped from litigating the claims because the issue of whether plaintiffs were discharged by defendant or whether they voluntarily left defendant's employ without good cause was litigated in state court and decided in favor of defendant. Because the court finds that *Patterson* mandates summary judgment in favor of defendant, the court need not address the collateral estoppel issue.

2. The text of 42 U.S.C. § 1981 reads:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

ply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Patterson,* 491 U.S. at ——, 109 S.Ct. at 2369, 105 L.Ed.2d at 147. In *Patterson,* plaintiff claimed her employer harassed her and failed to promote her, all because of her race. *Id.* at ——, 109 S.Ct. at 2368, 105 L.Ed.2d at 146. The court dismissed the harassment claim as not actionable under § 1981, but remanded the promotion claim since it may be actionable if the promotion would have constituted a new contractual relationship with the employer. *Id.* at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. If *Patterson* is applied retroactively, plaintiffs' claims regarding the harassment and discharge should be dismissed as they are not actionable under § 1981 and plaintiffs' promotion claims will be dismissed if the promotion would not have constituted a new contractual relationship.

The general rule is that new decisions are applied to existing cases. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 662–64, 107 S.Ct. 2617, 2621–22, 96 L.Ed.2d 572, 583 (1987); *Kozam v. Emerson Electric Co.,* 711 F.Supp. 313, 316 (N.D.Miss.1989). But the United States Supreme Court advised that non-retroactivity is appropriate in certain defined circumstances.

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of non-retroactivity.' *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971) (citations omitted).

The Fifth Circuit recently addressed the question of whether *Patterson* should be given retroactive application in *Carroll v. General Accident Ins. Co.,* 891 F.2d 1174, 1176 (5th Cir.1990).[3] The court discussed the *Chevron* factors concluding that *Patterson* did establish a new principle of law in the Fifth Circuit[4] and that the purposes of *Patterson* do not require non-retroactivity of the decision. *Id.* at 1176. In its discussion the court noted that the purposes of *Patterson* were to give effect to the limiting language of § 1981 and to enforce the detailed administrative procedures required to commence suit under Ti-

---

**3.** Some courts have perfunctorily assumed that *Patterson* should be retroactively applied, without going through the *Chevron* analysis. *Rathjen v. Litchfield,* 878 F.2d 836, 842 (5th Cir. 1989); *Greggs v. Hillman Distr. Co.,* 719 F.Supp. 552 (S.D.Tex.1989). Still other courts have applied *Patterson* after a conclusion that the *Chevron* analysis does weigh in favor of applying the decision retroactively. *Carroll v. General Accident Ins. Co.,* 891 F.2d at 1176 (no substantial hardship to plaintiff because plaintiff prevailed at trial on the Title VII claim); *Jordan v. United States West Direct Co.,* 716 F.Supp. 1366, 1369 (D.Colo.1989) (no hardship to plaintiff because plaintiff has a viable Title VII claim); *Williams v. National R.R. Passenger Corp.,* 716 F.Supp. 49, 50 n. 1 (D.D.C.1989) (found no reasons to not to apply *Patterson* retroactively); *Morgan v. Kansas City Area Transport Authority,* 720 F.Supp. 758, 760 (W.D.Mo.1989) (no hardship to plaintiff because plaintiff has a viable Title VII claim

and because *Patterson* only clarified existing law and did not announce a new principle of law).

**4.** The Fifth Circuit has stated that "Section 1981 is a parallel remedy against discrimination which may derive its legal principles from Title VII." *Blum v. Gulf Oil Co.,* 597 F.2d 936, 938 (5th Cir.1979). Furthermore, Fifth Circuit case law has treated § 1981 as a means of redressing employment discrimination. *See e.g. Comeaux v. Uniroyal Chem. Corp.,* 849 F.2d 191, 192 & n. 1 (5th Cir.1988); *Nash v. City of Houston Civic Center,* 800 F.2d 491 (5th Cir.1986); *Adams v. McDougal,* 695 F.2d 104 (5th Cir.1983); *Junior v. Texaco,* 688 F.2d 377, 379 n. 3 (5th Cir.1982); *Williams v. New Orleans S.S. Ass'n,* 673 F.2d 742 (5th Cir.1982), *cert. denied,* 460 U.S. 1038, 103 S.Ct. 1428, 75 L.Ed.2d 789 (1983); *Whiting v. Jackson State University,* 616 F.2d 116 (5th Cir. 1980).

tle VII. *Id.* The court found that the second *Chevron* factor did not support non-retroactivity. *Id.* The court noted that, in a broad sense, § 1981 serves the purpose of punishing employers who discriminate on the basis of race and compensating the victims of such racial discrimination. Applying *Patterson* retroactively would not, according to the court, undermine § 1981 because Title VII is available as a means of punishing employers and obtaining relief for victims. *Id.*

In analyzing the third factor, the *Carroll* Court discussed the equities with regard for the employer and the alleged victim. The court noted that it would be unjust to require the employer to pay damages to which *Patterson* held plaintiff was not entitled. The court also noted that plaintiff was not deprived of relief because she was entitled to retain the damages the trial court awarded her under Title VII. The court concluded that *Patterson* should be applied retroactively.

Because the facts differ, the *Carroll* decision does not squarely provide the answer in the case *sub judice.* Unlike the plaintiff in *Carroll*, plaintiffs in this case failed to file their claim under Title VII and it appears that the time for filing a Title VII claim has run. Plaintiffs argue that applying *Patterson* retroactively will result in substantial inequities since they will have no remedy for the alleged discriminatory practices.

The court has found no cases in this circuit with a similar fact situation that discuss the appropriateness of applying *Patterson* retroactively. But *Williams v. Phil Rich Fan Mfg. Co.,* 552 F.2d 596 (5th Cir.1977) provides some guidance on this issue. In *Williams*, plaintiff was terminated on November 25, 1970 and filed a charge with the Equal Employment Opportunity Commission (EEOC) on May 14, 1971. Plaintiff received her "Right to Sue" letter from the EEOC on September 19, 1974 and within two weeks filed suit under Title VII and 42 U.S.C. § 1981. Texas law provided that plaintiff's § 1981 claim must be brought within two years or it was barred. The Fifth Circuit, however, had previously

held that "the filing of an EEOC charge, even though untimely, had the effect of tolling the statute of limitations applicable to actions commenced under § 1981." *Id.* at 597 n. 2. *See Guerra v. Manchester Terminal Corp.,* 498 F.2d 641, 648–49 (5th Cir.1974).

While the case was pending, the United States Supreme Court decided *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), holding that the statute of limitations applicable to an action brought under § 1981 is not tolled by filing a claim with the EEOC since § 1981 and Title VII provide two different types of claims for purposes of limitations. *Id.* at 466, 95 S.Ct. at 1723, 44 L.Ed.2d at 305. In *Williams*, the Fifth Circuit concluded that *Johnson* should be applied retroactively even though plaintiff presumably placed reliance on Fifth Circuit precedent which held that filing the EEOC charge tolled the § 1981 statute of limitations. *Williams*, 552 F.2d at 600. The court followed the rule that "in deciding whether civil rules should be applied retroactively ... the purpose of the rule should be given greater weight than the extent to which the parties relied on the law that existed before the rule was announced." *Id.* (quoting *Matter of S/S Helena,* 529 F.2d 744, 748 (5th Cir.1976)). The purpose of the *Johnson* holding was to bar stale claims. The court gave the purpose more weight than plaintiff's reliance on Fifth Circuit precedent and dismissed the claim. *See Page v. U.S. Industries, Inc.,* 556 F.2d 346 (5th Cir.1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978) (followed *Williams* and retroactively applied *Johnson* which required dismissal of plaintiff's case). *See also Antoine v. United States Postal Service,* 781 F.2d 433, 437 n. 5 (5th Cir.1986).

The purposes of *Patterson* as noted by the Fifth Circuit in *Carroll* were to properly interpret § 1981 and to interpret it in such a way that enforces the procedures required for filing suit under Title VII. *Patterson*, 491 U.S. at ——, 109 S.Ct. at 2374, 105 L.Ed.2d at 153. Following previous Fifth Circuit precedent, the court must give more weight to the purposes of *Pat-*

*terson* than to any presumed reliance by plaintiffs on prior Fifth Circuit law. If *Patterson* is not applied retroactively, plaintiffs will be excused for failing to file their claim under Title VII as *Patterson* indicates they should have and defendant will be punished for actions that the Fifth Circuit had previously labeled violations of § 1981, but which the Supreme Court says are not violative of § 1981. Such a result would be directly contrary to the purposes of *Patterson*. The second *Chevron* factor, therefore, weighs in favor of applying *Patterson* retroactively.

■ The court does not find that substantial inequity will result if *Patterson* is retroactively applied because plaintiffs had an available remedy under Title VII. They simply chose not to pursue it and instead filed the action only under § 1981. As the *Carroll* court noted, it would be unjust to require the employer to be liable for damages when the Supreme Court has held that plaintiff is not entitled to such damages. So even though plaintiffs may suffer some hardship if their claim is dismissed, defendant will suffer hardship if it is allowed to go forward. Plaintiffs took the chance that they would be without a remedy if they were denied recovery under § 1981. In effect, plaintiffs slept on their Title VII rights and should not now be allowed to claim that applying *Patterson* retroactively will produce a substantial inequity. The Supreme Court stated in *Johnson* that:

> Congress clearly has retained § 1981 as a remedy against private employment discrimination separate from and independent of the more elaborate and time-consuming procedures of Title VII. Petitioner freely concedes that he could have filed his § 1981 action at any time after his cause of action accrued; in fact, we understand him to claim an unfettered right so to do. Thus, in a very real sense, petitioner has slept on his § 1981 rights. The fact that his slumber may have been induced by faith in the adequacy of his Title VII remedy is of little relevance inasmuch as the two remedies are truly independent.

■ If plaintiffs are allowed to go forward with their § 1981 claim and prevail at trial, it is possible that they will recover more damages than the plaintiff in *Carroll* because § 1981 provides for some damages not recoverable under Title VII. The *Carroll* Court modified the trial court's award of damages to plaintiff by taking away the § 1981 damages, leaving plaintiff with the Title VII damages only. The court finds that it would be unjust to allow plaintiffs who did not prudently file their claim under Title VII to recover more damages than plaintiffs such as Carroll who prudently filed under both Title VII and § 1981. The equity factor, therefore, weighs in favor of retroactively applying *Patterson*. After weighing the three *Chevron* factors, the court concludes that *Patterson* should be retroactively applied.

## APPLICATION OF PATTERSON V. McLEAN CREDIT UNION

■ Application of *Patterson* mandates that defendant's Motion for Summary Judgment be granted under two different theories. First, defendant is entitled to summary judgment on the wrongful discharge allegation and the working conditions allegation because such actions are no longer cognizable under § 1981. Since such allegations are no longer cognizable under § 1981, no factual issues concerning those allegations are material. Defendant is also entitled to summary judgment on the promotion allegation because plaintiffs have not created a genuine issue of material fact that any of plaintiffs were denied a promotion that would have constituted a new and distinct contractual relationship with defendant as required by *Patterson*.

The amended complaint simply states that plaintiffs were denied promotions. The promotion claim is actionable under § 1981 only if the change in position effectively creates a new and distinct contractual relationship with the employer. *Patterson*, 491 U.S. at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. Furthermore, petitioner must show that "she applied for and was qualified for an available position, that she was rejected, and that after she was reject-

ed [defendant] either continued to seek applicants for the position, or ... filled the position with a white employee." *Id.* at ——, 109 S.Ct. at 2378, 105 L.Ed.2d at 157. *See also Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 & n. 6, 101 S.Ct. 1089, 1093 & n. 6, 67 L.Ed.2d 207, 215 & n. 6 (1981). These elements must be met for plaintiff to make out a prima facie case. *Patterson,* 491 U.S. at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 157. If plaintiff can make out a prima facie case, an inference of discrimination arises which defendant can rebut by showing a non-discriminatory reason for denying plaintiff the promotion. At that point, the burden of persuasion of intentional discrimination shifts back to plaintiff. *Id.*

Defendant points out that the evidence does not indicate that any plaintiff ever applied for an available position, and that even if such an allegation had been made, the evidence does not show that any promotion that would have been available to plaintiffs would have constituted a new and distinct contractual relationship. Diane Bridges testified at her deposition that Lucille Clay applied for the position of social advocate and that a white person was later hired in that position. But Lucille Clay testified that although she "expressed an interest" in that position, the position was never vacant after her expression of interest. Therefore, the court finds that there is no genuine issue of material fact regarding plaintiff Lucille Clay's promotion claim. In her answers to interrogatories, plaintiff Clara Williams stated that she was not allowed to apply for the positions of activities director and social director and that white employees were eventually hired for those positions. The remaining plaintiffs failed to allege any specific promotion they were denied or were discouraged from applying for because of their race. Because *Patterson* held that plaintiffs must have been denied an available position and all plaintiffs except Clara Williams have failed to offer any evidence indicating that a particular position was denied them, defendant is entitled to summary judgment on the promotion allegation against all plaintiffs excluding Clara Williams.

Additionally, defendant is entitled to summary judgment on the promotion allegation of Clara Williams because she has failed to offer any evidence that the positions of activities director and social director constituted a new and distinct contractual relationship. Even if Clara Williams had applied for and been denied those positions because of her race, plaintiff has not presented any evidence and the court finds none that that position would constitute a new and distinct contractual relationship.[5] All indications are that the positions of nurses' aide, therapist, activities director, and social director are all variations of employment-at-will relationships. Certainly, going from a nurses' aid to activities director or social director would not constitute a distinct change in the employment relationship such as the example mentioned in the *Patterson* decision where plaintiff was an associate in a law firm and was denied a partnership in the firm. *Patterson,* 491 U.S. at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. *See Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Accordingly, defendant is entitled to summary judgment against Clara Williams and all other plaintiffs on all claims.

An order in conformity with this Memorandum Opinion will issue this day. All briefs, exhibits, affidavits, and other matters considered by the court in granting summary judgment are incorporated into the record.

---

5. In their Brief in Opposition to the Motion for Summary Judgment, plaintiffs indicate that defendant failed to promote them from temporary to permanent status. However, the materials submitted by plaintiffs under Rule 56 fail to demonstrate that any of the plaintiffs were temporary employees. The court notes for the record that the brief also states that plaintiffs were employed by defendant for time periods ranging "from a few months to over eleven years," which indicates that plaintiffs were not temporary employees.